Next case will be 085023, industrial door contractor v. United States Good morning. We're here today on appeal of a ruling by the Court of Federal Claims on a motion for summary judgment that was filed by Industrial Door, my client, and a cross-motion that was filed by the government, specifically the denial of the government's cross-motion. So the denial of the industrial door's motion would be a grant of the government's motion. Now, with respect to the government's cross-motion, in order to affirm this, the Court must determine that the record demonstrates no question of fact, no inference in the record that could be drawn in favor of Industrial Door that would impact the entitlement of the government to summary judgment as a matter of law. Now, to put it another way, the evidence of a non-moving Industrial Door and evidence in the types that are allowed by Rule 56 is to be believed in the context of the government's cross-motion. Well, as you noted, you all filed for summary judgment as well. So in your view, there were no issues of material fact, disputes of material fact involved in this case as well, right? That's right. I would submit that there are no issues of fact, and my client should be entitled to summary judgment. And in a little quick background, and then I'll get to what the affidavits show and show why. Well, what's the dispute? The dispute of material fact involves what? Whether or not your proposal allowed for someone else constructing a third door. Right. The government contends that Industrial Door intended for a different door manufacturer to manufacture the braced-on camping doors. And isn't that what all the documents stated? No. The affidavits in the record, which is affidavits on the types of evidence that are allowed by Rule 56, show that Industrial Door always intended to manufacture all three types of doors. That the only reason door engineering, that's the other door manufacturing, their experience requirements were included was because the architect for the Smithsonian told Hensel Phelps, the general contractor, that they weren't going to approve Industrial Door, notwithstanding the settlement agreement that was found to be in existence by this court previously. Notwithstanding that agreement, they wouldn't approve Industrial Door unless Industrial Door submitted experience qualifications for braced-on camping doors. Now, we know Industrial Door can't do that. Smithsonian looked at Industrial Door's qualifications previously for the two other kinds of doors and deemed it qualified based on its experience with those two other kinds of doors. Smithsonian knew it didn't have any experience with the braced-on camping doors and yet deemed it qualified. Now, the solicitation for the project with respect to quality assurance for all three types of doors, it's the same language. It has several sections. The first section states that you have to show that you have engaged in manufacturing the type of door for a period of time. The second section, B, requires that you have to show that a certain number of installations of that type of door. And then C, of the quality assurance, requires that the door manufacturer must certify that it will design and fabricate 75% or more of the door's components. But doesn't the document that appears in appendix 485 show that the proposal was that the braced-on canopy hanger doors would be manufactured by Door Engineering, a different company? Well, there are two different sections in the solicitation. Number one, the requirement that all of the doors be furnished by a single manufacturer. Furnish is different from manufacturer. Specifically for all three doors, it states, all hanger doors for this project shall be furnished by a single manufacturer responsible for both rolling hanger doors and for braced-on canopy hanger doors. Shall be furnished by a single manufacturer responsible. The intent is that the government only looks at one company with respect to all of the doors on the project. The second issue has to do with quality assurance, which I was just going through. And under quality assurance, those three sections I've just listed, which includes the certification, that's part C. Section D of quality assurance identifies three companies that are deemed qualified. Now, there's evidence in the record that only one of those actually met the A, B, and C of the solicitation, but that's kind of a separate issue. E states that other manufacturers, other than the three that are listed in D, will be considered if they can successfully demonstrate the items in A, B, and C. And the approval, early approval is required. Industrial door was approved by the settlement agreement. In other words, they're passed submitting A, B, and C. By looking at A, B, and C, the architect of the Smithsonian was breaching the settlement agreement because industrial door was approved. E, they would be considered if they could successfully demonstrate A, B, and C. Industrial door was approved. Now, getting back to my earlier point, when industrial door was told that the architect would not approve it for the project without demonstrating experience embraced on canopy doors, and that's in the affidavits, it submitted door manufacturing's experience, not because door manufacturing was going to manufacture the doors, but because it was trying to get past this dispute that was arising in the matter that it believed had already been settled. Then, immediately after the rejection of its experience by the architect, it sent a letter to the Smithsonian stating, tens of thousands of the Smithsonian, stating that it was the manufacturer for all three types of doors, essentially reminding the Smithsonian of the agreement and that it wished to participate in this project. The Smithsonian ignored that letter. So, even if you find that the submission of the door, the door engineering's experience qualifications... When did they send that letter? Because you're arguing that the breach occurred on May 14th, 2001. Well, we all agree with that. Industrial submission was May 14th. Well, by requiring the submission, that's a breach in itself. It would have been a harmless breach if the architect had approved industrial door. The architect communicated its disapproval of industrial door on June 12th, or June 11th, I think. I think it was June 12th. On that same day, industrial door sent a letter asserting that it was the manufacturer for all three doors. Now, it's also interesting... The government was assessing their eligibility with the information that was submitted in May. Right. Yes. Appropriately. Correct. I mean, that was the information that had been submitted. That information should not have been required. Industrial door was already past the approval process. That information that was submitted in May was to approve its qualifications for the project. It was... The architect for the Smithsonian was requiring industrial door to submit its qualifications. It was requiring it to comply with A, B, and C of the quality assurance provisions of the solicitation. But industrial door was already passed. Industrial door was essentially added to D. It was the fourth contractor that was approved by the settlement agreement. And so, by requiring them to submit their qualifications again, that was a breach of the contract. The harmful part of it was when they didn't allow industrial door to participate in the project. As soon as industrial door found that out, they wrote a letter to the Smithsonian reminding them of the agreement and stating that they were the manufacturer for the three types of painted doors. Now, it's interesting to look at the reasons that were given by the Smithsonian for rejecting industrial door because nowhere in those reasons is stated, you submitted qualifications of another manufacturer. Somebody else is going to manufacture the great star canopy doors. What the architect actually did is look at the qualifications that had been submitted and judge them in view of the number that had been installed and the number of years that industrial door had been installing them. For the great star canopy doors, it just went through the list. The solicitation requires the middle of 15 door installations. 11 were submitted. Five were required to be 12 meters high. None were in excess of 9.15. 15 installations applied for being in satisfactory operation for five years. Only five submitted have been in service that long. Information incomplete does not list various pieces. It doesn't say, this is another door manufacturer. And the reason for that is that the government didn't take that position. The government all along has taken the position that there was no settlement agreement at all. That it didn't exist. That it wasn't in effect. And they've taken that position right up until the last appeal before this court. Now, as far as the other two types of doors, the government did mention that it didn't conform to 803421.2D, which is the provision that requires one manufacturer to furnish all of the hangar doors. But it doesn't say, the manufacturer for braced-arm canopy doors is a different manufacturer. What it says is, has not submitted evidence of any appropriate braced-arm canopy doors. That's an important distinction. Because it's talking about what was actually submitted, rather than alerting Industrial Door that it was taking the position that Industrial Door was outside of the agreement. Let's hear from the other side. Jay, you're up. May it please the court, we respectfully request that the court affirm the decision of the Court of Federal Claims. The Court of Federal Claims correctly granted salary judgment in the government's favor. It pundits around that the government's breach of the party settlement agreement was not the proximate cause of any damages suffered by Industrial Door contractors. So the government's position is because they brought this third manufacturer in, they didn't qualify in any way? That's correct, Your Honor. Industrial Door, by virtue of the settlement agreement between the parties that this court found in its first decision, was to satisfy the experience requirements for manufacturing three types of doors. It did not satisfy any other requirements that the solicitation required for those doors. For instance, technical requirements, operating requirements, construction requirements. So, by submitting door engineering as a manufacturer for the braced-arm canopy door, Industrial Door not only acted outside that settlement agreement, but it violated the requirement of the solicitation that required that a single manufacturer manufacture all three types of doors. That requirement is found in section 1.2b? Yes, Your Honor. And it was a requirement for all three types of doors separately in the solicitation. Mr. McBride argues that the language says that the doors will be furnished by a single manufacturer. That's correct. Apparently arguing that that doesn't mean manufactured by a single manufacturer. That was one of their arguments, but they did concede an oral argument before the trial court that the word furnished was defined in the solicitation as requiring, quote, all supervision, labor, materials, tools, equipment, and services required for an incidental defabrication and erection of the doors, complete and in strict accordance with the specifications of applicable drawings. So, the word furnished doesn't mean manufactured. There's no doubt about that. And Industrial Door acted outside the scope of the party settlement agreement by submitting door engineering as the manufacturer for the braced-arm canopy door. But on summary judgment, I think the gravity of their argument is that on the problem of summary judgment, whether or not there were any issues of material fact. And their argument, as I understand it, and maybe I've got it wrong, is that at least they've got some evidence, some affidavits or some documentary evidence to state, to at least argue that even though they listed door engineering as the element, they didn't really mean it and the government knew they didn't really mean it. Why, if that's the case, wouldn't that prove at least summary judgment? Your Honor, summary judgment may be granted unless the non-movement, meaning Industrial Door in this instance, can show sufficient evidence that there is a genuine issue of material facts. The court found, after looking at these affidavits, which were prepared in anticipation of litigation, the court spent about three pages of its opinion analyzing these two affidavits by Industrial Door's president and attorney and found that there was not sufficient evidence within the affidavits to create a material issue of fact that would preclude summary judgment. And surely the documentation, which is contemporaneous evidence, shows in at least three instances that Industrial Door intended to have door engineering manufacture the Bravestone Canopy Door. First, the May 7th submittal, submitted by Industrial Door, included door engineering's specifications for that door. It also included a statement in the submittal saying that door engineering would manufacture that door. Very explicit. Secondly, there was an April 19th letter in the record in which Industrial Door stated that it certified that it would manufacture an excess of 75% of only the first two types of doors. It referenced the first two doors, doors A and B. But your answer seems to suggest that the problem with those affidavits is that given all the evidence on one side of the ledger, the judge just didn't believe the statements made on the eve of litigation. But if that's so, isn't that at least enough, I mean, to say it's not a summary judgment case? I mean, the judgment would be free to decide that when it reaches the merits. But isn't that at least, are the affidavits at least enough to defeat summary judgment? Not necessarily, Your Honor. The Supreme Court held in the Anderson versus Liberty lobby that there must be sufficient evidence in favor of the non-movement. He held that this was not sufficient evidence. It also, that case went on to say that if evidence is merely colorable or is not significantly probative, summary judgment may be granted. Here, it was not significantly probative. The affidavits were prepared well after the three documents in the record, and the third document was an April 19th, 2001 letter from Door Engineering to Hensel Phelps, the prime contractor, saying that we, Door Engineering, will manufacture in excess of 75% of the brazed-arm canopy doors. You've got three consistent statements. But wasn't there a, there's a June 12th, 2001 document, right? There is, and that was right upon the rejection by the Smithsonian and its architect of the three submittals. Industrial Door sent a letter to the prime contractor, with which it wanted a subcontract, saying to them, please resubmit the submittals and say that Industrial Door will manufacture all three doors. Well, isn't that probative of something? I mean, it may not be a winning argument, but isn't that probative of something? Not necessarily, Your Honor, because the contract is between the prime and the government. Hensel Phelps never did resubmit the submittals. The government can only accept a submittal that it has received. It received only one set of submittals in this case, which it rejected properly, as we have discussed. Hensel Phelps could have easily resubmitted all three submittals, saying Industrial Door will manufacture all three types of doors. It declined to do so. And why? The speculation. But it did not resubmit the submittals. And therefore, the government had nothing to act upon after that. Again, IDC or Industrial Door acted outside the settlement agreement and submitted new and different information to the Smithsonian than what was agreed to by the parties in their August 10th settlement agreement. Therefore, it was Industrial Door's actions and not the Smithsonian's that caused Industrial Door's submittals to be rejected and for Industrial Door to suffer a loss of profits with its anticipated contract with Hensel Phelps, the prime contractor. To recover lost profits for breach of contract, a plaintiff must establish, one, that the lost profits were the proximate cause of the breach. Two, the lost profits were within the contemplation of the parties. And three, a sufficient basis exists for estimating the amount of lost profits with reasonable certainty. Again, the lost profits were not the proximate cause of the government's breach. The only thing the government did in breaching the contract or settlement agreement was rejecting the submittal for Door A. And that was because part of the rejection stated that Industrial Door didn't have enough experience in manufacturing Door A. Of the three submittals, that was the only breach by the Smithsonian. All three submittals were rejected for not complying with a single manufacturer requirement. And the third door was also rejected because of technical problems and Door Engineering not being Industrial Door. It was Industrial Door that was qualified as having met the experience requirements, not anybody else. So therefore, there was no proximate cause. Secondly, any lost profits would have occurred under a collateral undertaking, a contract that was hoped for by Industrial Door, between it and Hensel Phelps. Not between Industrial Door and the government. The settlement agreement said nothing about any monies passing between the parties. Therefore, this would have been a collateral undertaking, such as in the Wells Fargo case. And therefore, Industrial Door could not meet its burden to incur lost profits. If the court has no further questions, we respectfully request that the court affirm the decision of the court. Thank you. In opposing a properly supported motion for summary judgment, the party must submit types of evidence listed in 56E. Affidavits, depositions, answers to interrogatories, admissions- The affidavits that you submitted at the last minute were company officials, cursory, subjective. The first affidavit was submitted in 2003. The affidavit of James Tillery. Well, a couple of years after. And it wasn't cursory, it detailed in great detail what happened in the text. That would be back in the text documents. The affidavit of Carl Dix, which the court disregarded because he formally was Industrial Door's attorney. He was, but he was not allowed to participate further in the case because he became a fact witness. Because he was involved in the formation of the settlement agreement. He was involved in the communication of qualifications. He was involved in the communication to Smithsonian that Industrial Door was going to manufacture the doors. Now, if the question is, did Industrial Door write an agreement by submitting door engineering, when the architect wrote back and said, advise and resubmit, that came. Industrial Door not only wrote to Hensel Phelps, but also wrote to the Smithsonian and said, we're going to manufacture all three doors. If they had gone outside of the agreement, they came back in as of June 12th. And that's in the affidavit of Carl Dix. And it's not just in the affidavit, it's in a document that's attached to that affidavit. A sworn certified document. Now, sworn certified documents are required by Rule 56. In opposition to Industrial Door's motion for summary judgment, the government hasn't submitted any affidavits or sworn documents. They just submitted a bunch of documents. That's all we have. It's outside of Rule 56. Now, as far as what the judge did in disregarding the affidavits that were submitted by Industrial Door, the judge drew inferences from the documents. He looked at the certification that was submitted by Industrial Door. And, yes, in the reference line, it only referenced two of the types of doors. But in the body, it said, we're committing to manufacture all of the doors for this project. Do you think these affidavits resemble the ones in the Sinsky case that we had here? I do not. And should we repel that? I think it's not a minimal consideration, but we're asserting. Well, the Sinksy case, and one thing about the Sinksy case is it was applying a specialized requirement in patent law. I know you said that, but I haven't suggested it. But let's assume from the moment that it's a broad proposition that it applies to many doors. Okay. Well, the contemporary evidence is that pencil clubs did list Industrial Door's manufacture for all of the doors. The certification by Industrial Door in its body said Industrial Door committed to manufacture all the doors for the project. If you give Industrial Door the inference of that, then Industrial Door was committing to manufacture based on canopy doors. That's a contemporaneous document. The day after the rejection, Industrial Door said, hey, it's Estonian. We're going to manufacture all three doors. Industrial Door was entitled to an inference from that. All of that is entirely consistent. Not inconsistent, but it's consistent with what's in the affidavits. Now, as far as inconsistent affidavits being disregarded, that's in the context of prior sworn testimony. And it's where there is no explanation for the inconsistency. Here, there is no prior sworn testimony. And there is an explanation as to why there's a difference, why door engineering was submitted. The certification about manufacturing all three doors that you're referring to is where in the affidavits? If you look at 194, you see quality assurance. One of the sliding doors, but it's the same system for all of them. 1.4C, must certify the design and fabricate 75% or more of the door system. And then E is where you look at the qualifications, and it says submit A, B, and C. Certification is one of the qualification requirements. I see that, but you were referring to attachments to the affidavit of Mr. Dix. They came in and said, no, no, no, we're going to manufacture all three. That is at 322. It's exhibit I to his affidavit. And what you see there is the facts cover sheet to the contracting officer, the next page, the text of the facts, and then the attachment is the letter that industrial doors sent to Hensel Phelps, stating that they were to manufacture for all three types of doors. Now, the question here isn't whether industrial doors are going to win on this evidence. The question is whether there's enough to suggest that there should be a trier of fact that decides it after evidence is presented, rather than a judge on a summary judgment motion. Thank you, Your Honor. All rise.